[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Linda Daley whose maiden name was Linda Barrington and the defendant Kevin Richard Daley intermarried in Pensacola, Florida on June 4, 1955. Hereinafter the parties are called husband and wife. The plaintiff has resided continuously in the state of Connecticut for more than a year preceding the date of the filing of the complaint. The court finds that the marriage of the parties has broken down irretrievably and they have testified accordingly. The Court finds that there were three children issue of the marriage all who have reached their majority. The court further finds that neither the state of Connecticut nor any of its subdivisions have contributed to the support or the maintenance of either of the parties or their children.
This case was well presented by two competent lawyers.
The parties were married when the wife was nineteen and the husband was twenty-three. He was stationed at Pensacola, Florida in the military during the course of the early part of their CT Page 11413 marriage.
The husband was a graduate of Fordham University and the wife had one year of college. At the time she was married she was an office clerk and he was an officer in the military. They brought no real assets to the marriage. The wife brought nothing and the husband may have owned his own car.
During the course of the marriage the wife took two years of interior design but never used the skills acquired as a business or an income producer but rather used it to improve the homes that she lived in.
When the parties married in 1955 a traditional family was one that saw the husband go to work and the wife stay home to raise the children. That was in this Court's perception a traditional family for that time and they followed this. The evolution of their family and their success is well documented on the record. We have watched a man who was employed by others take over and have a majority interest in his own corporation known as Communispond Incorporated. He owns 436,500 shares of that company. The parties own a house in Greenwich that they agree is worth in excess of a million dollars. The equity in the house is approximately $765,000. The parties lives have involved fine restaurants, the Greenwich Country Club, living in Greenwich and a ski-house in Vermont.
The wife presently lives in the marital home at 57 Old Church Road, Greenwich, Connecticut and the husband lives in his condominium being unit 203 Palmer Point, River Road, Greenwich Connecticut which he shows with a value of $237,705.
It is clear that in April of 1990 a romantic interest surfaced that involved the husband with another woman. He presently lives with that woman at his condominium location. He provides all of the money for the expenses of that condominium in Greenwich without contribution from the other woman although she makes a salary of approximately $53,000.
The husband explains the relationship on the basis that there was a slow erosion in the marriage. For the first eighteen years of the marriage there were substantial alcohol problems with his wife as he perceived them and described vividly some incidents that took place while she was drinking. She has not consumed alcohol for the last eighteen years. He found however that the parties CT Page 11414 drifted apart. He found that the love and care in a marriage was not there and explains his relationship with the other woman on that basis.
The wife described her role in the house as one of child rearing and being a companion, friend, lover and a dutiful wife.
This Court finds that the marriage has broken down irretrievably but assesses no fault to either of the parties since it is obvious that they have moved in different directions during the course of the marriage. It is abundantly clear that the assets that are presently shown by the parties on their respective financial affidavits came about as the result of the work of the husband in his role as the economic provider. The Court is mindful of the non-financial contributions of the wife that have been made by her and the fact that she has not had regular employment during the 37 years of the marriage. The Court has considered O'Neill v. O'Neill. 13 Conn. App. 300 (1988).
The Court has listened to the witnesses and reviewed all the exhibits in the case. In addition the Court has taken into consideration all the criteria set forth in 46b-81 the assignment of property and transfer of title statute, 46b-82 the alimony statute, and 46b-62 the attorneys fees statute. The Court has also listened to the arguments of counsel and their written proposals and claims for relief and briefs post trial along with the financial affidavits of the parties. The Court finds that the husbands salary this year (1992), is $250,000 and that he has received in addition $40,000 for a total gross income of $290,000. The Court further finds that there is no tax due on the $40,000 received this year since it was paid in a previous year because of certain Subchapter S tax treatment.
The Court orders the following relief:
 1. That the marriage is dissolved on the grounds of irretrievable breakdown.
 2. The husband is ordered to quitclaim his interest in the family home at 57 Old Church Road, Greenwich, Connecticut to the wife and that the wife indemnify and hold him harmless in connection with the mortgage and all other liabilities of the property. Failure to transfer the property by quitclaim deed will allow the Court to transfer the property pursuant to 46b-81(b) CT Page 11415
 3. That a QDRO (a qualified domestic relations order) issue dividing the existing profit sharing plan with Communispond valued at $951,000 equally between the parties so that the wife is the owner of approximately $475,500 in pension benefits. (The one-half value is the value at the date of this decision.)
 4. That the Putnam Trust Certificate of Deposit in the approximate sum of $90,000 as shown on the wife's affidavit shall be the wife's.
 5. That the Putnam Trust Certificate of Deposit in joint names of the plaintiff and defendant as shown on the wife's affidavit shall be divided equally between the parties in the approximate sum of $24,000 each.
 6. That the city Trust Certificate of Deposit in the joint names of the plaintiff and defendant as shown on the wife's affidavit be divided equally between them so that each of them owns approximately $30,000.
 7. That all of the furniture and furnishings in the house in Greenwich, Connecticut be the sole and exclusive property of the wife.
 8. That all of the jewelry and other personal items owned by the wife and in her possession be her sole and exclusive property.
 9. That her Putnam Trust Company joint checking account as shown on the wife's affidavit be her sole and exclusive property in the approximate sum of $4,000.
 10. That her Putnam Trust Company savings account in joint names as shown on wife's affidavit in the approximate sum of $2,600 be her sole and exclusive property.
 11. That the Putnam Trust Personal Savings as shown on the wife's affidavit in the approximate sum of $3,000 be her sole and exclusive property.
 12. That the 1990 Buick Park Avenue automobile in the value of approximately $10,000 shall be transferred to the wife as her sole and exclusive property. CT Page 11416
 13. That the husband shall pay to the wife as alimony, the sum of $8,500 per month until the death of either party or the remarriage or cohabitation of the wife under the statutes. The Court notes that the husband is in the 32.4% marginal tax bracket so that each dollar paid the wife actually costs him $.676 cents. (sixty-seven and six tenths cents.)
 14. The Greenwich condominium owned by the husband known as unit 203 Palmer Point, River Road, Greenwich, Connecticut and its contents are to become sole and exclusive property of the husband.
 15. The ski-house at Fayston, Vermont and its contents shall become the sole and exclusive property of the husband and the wife shall quitclaim all her right title and interest in that property to the husband.
 16. The one hundred thirty five acres at Waterbury, Vermont shall remain the joint property of the parties.
 17. The court finds the expenses for attorney's fees and litigation incurred by the wife in the sum of $20,000 to be fair and reasonable. The court orders the husband to pay $15,000 of that amount in order not to undermine the financial orders of this court. Said sum to be paid within thirty days of this order.
 18. The husband is to carry $200,000 of insurance on his life for the benefit of the wife as long as he is paying her alimony. Said Insurance being Phoenix Mutual Life Policy #2368716. In addition, the husband shall make arrangements to provide for the payment of $400,000 to the wife on his death. Failure to so provide shall cause the wife to have a $400,000 claim against the husband's estate.
 19. The husband shall make available to the wife medical insurance for her benefit so long as he is permitted to do so under applicable law. In addition, the husband is to pay the cost of that insurance for one year from the date hereof.
CT Page 11417
 20. The husband's IRA accounts at Bowery Savings Bank and the Seliquin Trust Fund in the approximate value of $122,000 are awarded to the husband.
 21. The husband's business known as Communispond is found to have a value of $436,500 and it is awarded to the husband free and clear of any claims of the wife.
 22. All other assets and liabilities shown on the parties financial affidavits and not addressed herein, are to remain their sole and exclusive property and debts.
 23. All claims for relief not expressly addressed herein have been rejected by this court.
Karazin, J.